William W. McKEE

v.

SOUTHERN RAILWAY COMPANY, Defendant and Third-Party Plaintiff,

v.

DAVID ROUND & SON, INC., formerly known as Edward Richards & Associates, Inc., and Drasco, Inc., formerly known as David Round & Son, Inc., Third-Party Defendants.

Civ. A. No. 13034.

United States District Court, N. D. Georgia, Atlanta Division.

Aug. 6, 1970.

Ross & Finch, Atlanta, Ga., for plaintiff.

Herman H. Buckner, Marietta, Ga., for defendant.

Greene, Buckley, DeRieux & Jones, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for third-party defendants.

## ORDER

EDENFIELD, District Judge.

This case is now before the court upon motions by third-party defendants David Round & Son, Inc. and Drasco, Inc., to dismiss the third-party complaint and to quash service of the third-party complaint on the grounds that (1) the Federal Rules of Civil Procedure provide for service of third-party complaints only under 4(f), specifically excluding service of such complaints according to state procedures under Rule 4(d) (7), and (2) third-party plaintiff's claim for indemnity arose, if at all, in 1967, at the time of the wrongful acts alleged in the main action, prior to the 1968 amendment to the Georgia Long-Arm Statute which brought non-resident corporations within its provisions for the first time.

In support of this first contention, third-party defendants (hereinafter referred to collectively as Drasco) rely primarily upon American Carpet Mills, Inc. v. Bartow Industrial Development Corp., 42 F.R.D. 1 (N.D.Ga.1967) (per Smith, J.), a decision which has not been followed by other courts and which even this court has specifically declined to follow. Hutson v. Sears, C.A. 12238, N.D.Ga., Sept. 30, 1969. Since our prior opinion on this question was not published the relevant language therefrom is quoted below:

"Under the reasoning adopted in that decision [*American Carpet Mills, supra*], the court found that Rule 4(f) provided a means of service for third-party complaints and specifically excluded service according to state procedures under Rule 4(d) (7).

"We choose not to follow this ruling. Rule 4(d) (7) provides that:

'Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule [dealing with service upon an infant or incompetent and service on a domestic or foreign corporation, partnership or other unincorporated association] it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon

any such defendant in an action brought in the courts of general jurisdiction of that state.'

"Rule 4(e), in relevant part, notes that:

'* * * Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state * * * service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.'

"Rule. 4(f), which Biltmore Textile contends limits service under state long-arm procedures authorized under Rules 4(d) (7) and 4(e), provides that:

'All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States *or by these rules*, beyond the territorial limits of that state. In addition, persons who are brought in as parties pursuant to Rule 14, or as additional parties to a pending action or a counterclaim or cross-claims therein pursuant to Rule 19, may be served in the manner stated in *paragraphs (1)–(6) of subdivision (d) of this rule* at all places outside the state but within the United States that are not more than 100 miles from the place in which the action is commenced, or to which it is assigned or transferred for trial; and persons required to respond to an order of commitment for civil contempt may be served at the same places. A subpoena may be served within the territorial limits provided in Rule 45.' (Emphasis added.)

"In order to understand the interrelationship of these three parts of Rule 4, the legislative intent behind the 1963 amendments to Rule 4 must be discussed. There had been some doubt if service under a state long-arm statute was permissible due to the original

wording of Rule 4(f). Prior to its 1963 amendment, Rule 4(f), by its literal terms seemed to restrict service to the territorial limits of a state, absent a *federal* statute to the contrary. As originally enacted, it provided that:

'All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. * * *'

However, the Advisory Committee on Rules approvingly states that most courts did not treat original Rule 4(f) as a limitation on out-of-state service pursuant to a state long-arm statute, under Rule 4(d) (7). *See, e. g.,* Giffin v. Ensign, 234 F.2d 307 (3d Cir. 1956). To clear up lingering doubts of any such limitation on long-arm service, McCoy v. Siler, 205 F.2d 498, 501–2 (3d Cir. 1953) (concurring opinion), cert. denied, 346 U.S. 872 [74 S.Ct. 120, 98 L.Ed. 380], Rules 4(d) (7), (e), and (f) were amended.

"Rule 4(d) (7) was amended to maintain the salutary results of those cases allowing use of state long-arm service unencumbered by any limitations from original Rule 4(f). Notes of Advisory Committee on Rules to 1963 Amendments. Moreover, 4(d) (7) was changed to:

'* * * [M]ake clear that when out-of-state service is made pursuant to state law, as authorized by subdivisions (e) and (f), the law on which such service is based is that of the state in which the district court sits, not the state where service is ultimately accomplished.' 2 Moore, supra, ¶ 4.01[1], at 915.

"Rule 4(e) was likewise amended in 1963, to allow 'resort in original Federal actions to the procedures provided by State law [for example, state long-arm statutes] for effecting service on non-resident parties.' Notes of Advisory Committee on Rules to 1963 Amend-

ments. As Professor Moore puts it, 'Thus, amended subdivision (e) makes clear that service in federal actions may be based on state long-arm statutes * * * which predicate jurisdiction upon the doing of an act within the state or some other contact with the state.' 2 Moore, supra, ¶ 4.01[1], at 915.

"The 1963 amendment to Rule 4(f) makes it equally clear that nothing was being taken away from Rules 4(d) (7) and 4(e). The first sentence of 4(f) was amended by adding 'or by these rules' to those instances when extraterritorial service was permitted. Thus, out-of-state service was allowed not only, as before, when a federal statute so allowed, but also when authorized under the Federal Rules—such as Rules 4(d) (7) and 4(e) authorizing use of state procedures. This sentence was added to 'remove all possibility of conflict with' Rules 4(d) (7) and 4(e) and to make it clear that state long-arm service was permissible. To give the reading requested by Biltmore Textile would be to read back into Rule 4 the very conflict which the drafters sought to eliminate. The second sentence added to Rule 4(e) by the 1963 amendment provided an *additional* method of service within the so-called '100-mile bulge' outside the state and district in which the federal court sat in third-party actions. Since a purely federal procedure was authorized, the amendment made it clear that only federal mechanical procedures for service could be used. Thus, state methods of service are not applicable when service is made in bulge cases. But bulge service is an additional means of service, not a limitation on other service; it was designed to enlarge service in certain third-party cases, not to limit service under other parts of Rule 4. The 1963 amendments to Rule 4 and the Advisory Committee comments indicate that service pursuant to state procedures authorized by Rules 4(d) (7) and 4(e) and by the first sentence of Rule 4(f) was not taken away in third-party actions by the second sentence to 4(f). There is no

reason to think that service upon third-party defendants was meant to be different in kind from service on defendants. Indeed, in the Notes of the Advisory Committee on Rules to amended Rule 4(d) (7), approval is specifically given to the pre-amendment case of Pasternack v. Dalo, 17 F.R.D. 420, 422–25 (W.D.Pa.1955), which upheld the validity of service of a third-party complaint under a long-arm statute pursuant to Rule 4(d) (7). Rule 4(f) as amended does nothing more than provide that *when* federal bulge service is relied upon —which it is not here—then federal *mechanical* procedures for that service as outlined in Rule 4(d) (1)–(6) must be followed. It does not limit use of state long-arm statutes in instances when bulge service is unnecessary.[1]

"1. There might be instances when bulge service would be used in lieu of long-arm jurisdiction: for example, cases in which the third-party defendant is within the bulge but minimum contacts do not exist for long-arm service.

"*American Carpet* has not been followed and the case law on this question is to the contrary.[2] *See*, Adams Dairy

"2. Monsieur Henri Wines, Ltd. v. S. S. Covadonga, 222 F.Supp. 139 (D.N.J. 1963), relied upon in *American Carpet*, *supra*, merely held that Rule 4(f) could be used in admiralty proceedings and conflicted with no admiralty rules.

Co. v. National Dairy Products Corp., 293 F.Supp. 1164 (W.D.Mo.1963), upholding validity of third-party service under the Missouri long-arm statute pursuant to Rule 4(d) (7) and finding that the second sentence of Rule 4(f) simply adds an additional bulge to territorial jurisdiction within which the process of a federal court may be served. To find otherwise would effectively undercut long-arm service, would create wasteful procedures in third-party actions, and would be contrary to the spirit and intent of Rule 4 and the Federal Rules. *See, also*, Nortown Steel Supply Co. v. Northern Indiana Steel Supply Co., 340 F.2d 934 (7th Cir. 1965), reaching an identical conclusion."

■ Drasco's second contention is that the claim for indemnity alleged in the third-party complaint arose prior to the 1968 amendment to the Georgia Long-Arm Statute and that the third-party defendants—both of which are non-resident corporations and therefore not covered by the Long-Arm Statute prior to the amendment—cannot be served under the Long-Arm Statute in this action. A similar contention was made in Hutson v. Sears, *supra*, and Drasco's argument is foreclosed by the court's ruling in that case:

> "Under Georgia law a claim for indemnity, whether arising by operation of law or from contractual relations, does not arise until the party seeking indemnity has incurred legal liability to the injured party. E.g., Southern Nitrogen Co. v. Stevens Shipping Co., 114 Ga.App. 581 [151 S.E.2d 916] (1966); Central of Georgia R. R. v. Southern Clays, Inc., 94 Ga.App. 377 [94 S.E.2d 625] (1956)." Hutson v. Sears, C.A. 12238, N.D.Ga., Mar. 30, 1970.[1]

Nor does the recent case of Thompson v. Abbott, 226 Ga. 353, 174 S.E.2d 904 (1970), require otherwise. In that case the original complaint sought damages for injuries received in an automobile accident which allegedly resulted from the joint negligence of two defendants —both of whom were living in Georgia at the time of the accident. Plaintiff subsequently dismissed the action against Defendant Thompson and the remaining defendant, Abbott, was allowed to file a third-party complaint against the dismissed defendant. The third-party defendant, who by that time was a non-resident and was served by mail under both the Nonresident Motorist Act (Ga.Code Ann. § 68–801) and the Georgia Long-Arm Statute (Ga.Code Ann. § 24–113.1), moved to dismiss on the ground that the court lacked jurisdiction over her person in that she was a resident of Georgia at the time the accident occurred and therefore not subject to service under either of the foregoing acts.[2]

The *Thompson* case is clearly distinguishable from the instant case in that (1) the question of when the cause of action arose was not before the court, since the parties agreed that service was improper if that third-party defendant was a resident of the State of Georgia at the time the *accident* occurred, and (2) the third-party plaintiff there was seeking contribution from a joint tortfeasor rather than indemnity from one who is alleged to be primarily liable.

Assuming that the Georgia Supreme Court's ruling can be considered authority for the proposition that a cause of action for contribution arises at the time of the alleged injury, despite the fact

---

1. See also, United New York Sandy Hook Pilots Ass'n v. Rodermond Industries, Inc., 394 F.2d 65, 75 (3d Cir. 1968); Wolverine Ins. Co. v. Tower Iron Works, Inc., 370 F.2d 700, 703–706 (1st Cir. 1966); Dixon v. Northwestern Nat. Bank of Minneapolis, 275 F.Supp. 582 (D. Minn.1967); C & L Rural Electric Cooperative Corp. v. American Cas. Co., 199 F.Supp. 220, 222 (E.D.Ark.1961); 42 C.J.S. Indemnity § 21.

2. The Georgia Supreme Court treated the motion as one for summary judgment, relying upon Samara v. United States, 129 F.2d 594 (2d Cir.). In *Samara*, however, the motion before the court was one to dismiss "on the ground that the court lacked jurisdiction *because of the insufficiency of the claim*." *Id.* at 595. Despite movants' inartful use of the word "jurisdiction" the motion obviously was one to dismiss for failure to state a claim and was properly treated as a motion for summary judgment since matters outside the pleadings were presented to and not excluded by the court. Under the Federal Rules of Civil Procedure a motion for summary judgment deals with the merits of the *claim* and is not available for the adjudication of matters in abatement, such as lack of jurisdiction. 6 Moore's Federal Practice ¶ 56.03.

that the point was not argued in that court and the court apparently assumed the point rather than actually deciding it, it still does not follow that the same would be true of claims for indemnity. Under Georgia law contribution among tortfeasors may be enforced "just as if they had been jointly sued," Ga. Code Ann. § 105–2012(1), which at least suggests some basis for holding that the cause of action might arise as to all joint tortfeasors at the same time. But claims for indemnity are not covered by that statute and the general rule that a claim for indemnity from one primarily liable arises only when judgment has been entered against the one who is claiming secondary liability must be regarded as controlling. *See* 3 Moore's Federal Practice ¶ 14.09; 42 C.J.S. Indemnity § 21. The court therefore concludes that in the instant case Southern Railway's claim against Drasco did not arise prior to the 1968 amendment to the Long-Arm Statute and that service of the third-party defendant corporation under that statute was effective.

 Also before the court is third-party plaintiff Southern Railway's objection to third-party defendant Drasco's Interrogatory 6(f) on the ground that it calls for description of written statements, which Southern Railway contends can be obtained only by way of a motion to produce. This contention is without merit. Rule 26(b) of the Federal Rules of Civil Procedure, which under Rule 37 governs the scope of discovery by way of interrogatories, specifically provides for discovery of "the existence, description, nature, custody, condition and location" of documents. Furthermore, although nothing is said concerning the *contents* of documents, "the reason for this is that such a provision would have been superogatory: inquiry as to the contents of relevant documents comes within the general phrase 'any matter, not privileged, which is relevant to the subject matter in the pending action.'" 4 Moore's Federal Practice ¶

26.20 at 1268–69. Accordingly, Southern Railway's objection to third-party defendant Drasco's Interrogatory No. 6(f) must be overruled.

In summary, third-party defendants' motions to dismiss and to quash service are denied and defendant's objection to Drasco's Interrogatory No. 6(f) is overruled.